IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTINE M. M.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 21-cv-776-DWD |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423 and 42 U.S.C. § 1383(c). Plaintiff also filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed below, Plaintiff's Motion for Summary Judgment is denied, and the final agency decision is due to be affirmed.

**Procedural History**

Plaintiff applied for DIB and SSI on June 3, 2019, alleging a disability onset date of February 1, 2019. After holding an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application on December 24, 2020. The Appeals Council denied Plaintiff's request for review on April 29, 2021, making the ALJ's decision the final agency

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

1

decision subject to judicial review. *See* 20 C.F.R. § 404.981. Plaintiff exhausted administrative remedies and filed a timely complaint with the Court seeking judicial review of the Commissioner's decision.

## **Applicable Legal Standards**

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. § 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. *See Craft v. Astrue*, 539 F.3d 668, 647, n.6 (7th Cir. 2008). For convenience, most citations herein are to the DIB regulations.

Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Here, the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 203 L. Ed. 2d 504 (Apr. 1, 2019) (internal citations omitted).  In reviewing for "substantial evidence," the Court takes the entire administrative record into consideration but does <u>not</u> "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; the Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010).

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. At step one, he determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date (Tr. 18).  At step two, the ALJ found that Plaintiff has the

3

following severe impairments: lumbar spine disorder and mild left hip osteoarthritis (Tr. 19). The ALJ also found that Plaintiff has the nonsevere impairments of hypertension and depression (Tr. 19). As for her depression, the ALJ concluded that Plaintiff has no limitations in the functional areas of mental disorders in the Listings of Impairments, 20 CFR, Part 404, Subpart P, Appendix 1, and thus does not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities (Tr. 19). At step three, the ALJ found that Plaintiff does not have any impairments or combination of impairments that meet any of the listings set forth in the Listing of Impairments (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except:

> she can lift and/or carry/push and/or pull 20 pounds occasionally, 10 pounds frequently. The claimant can sit, with normal breaks, for a total of 6 hours per 8-hour workday, and stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday. The claimant can frequently climb ramps and stairs, and occasionally climb ladders, ropes, or scaffolds. The claimant can frequently stoop, kneel, and crouch, and occasionally crawl. The claimant can tolerate occasional exposure to hazards such as unprotected heights and moving mechanical parts.

(Tr. 20).

At step four, the ALJ relied on the testimony of a vocational expert ("VE") to find that Plaintiff could perform her past relevant work as a retail clerk and store manager (Tr. 24). The ALJ also made alternative findings based on Plaintiff's residual functional capacity, age, education, and work experience, and found that Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national

economy (Tr. 24-26).  Accordingly, at step five, the ALJ found that Plaintiff was not disabled. (Tr. 26).

## The Evidentiary Record

Plaintiff was 51 years old at the time of her alleged disability onset date (Tr. 38). Plaintiff has her GED (Tr. 39, 63).  From 2006 to 2010, Plaintiff worked as a food preparer in the fast-food industry (Tr. 39-40).  From 2010 to 2019, she worked at Dollar General, first as a cashier, then working her way up to floor manager (Tr. 40).

On January 12, 2019, while at work, Plaintiff slipped on ice and fell (Tr. 44).  She was treated at St. Joseph's Breese emergency department immediately after the accident (Tr. 374).  An x-ray showed mild degenerative changes of the sacroiliac joints, chronic bilateral L5 pars defects with grade 1 anterolisthesis of L5 on S1 and moderate L5-S1 disc space narrowing, and mild lumbosacral spondylosis (Tr. 378-79). She was diagnosed with contusion of sacrum (Tr. 377).  She was discharged and instructed to use ibuprofen and a donut pillow for symptomatic relief and to follow-up with her primary care specialist for further management (Tr. 377).

On January 14, 2019, Plaintiff was treated at St. Joseph's Breese emergency department for additional pain management.  Her exams revealed tenderness to palpitation of the left quadricep muscles proximally and distally along with tenderness to palpation of the gluteal muscles (Tr. 382).  Samantha M. Callow, M.D. diagnosed Plaintiff with muscle strain in her left thigh, noting that her condition had improved and was stable.  Plaintiff was instructed to avoid bending, twisting, and heavy lifting until she healed, and to take naproxen and use lidocaine patches as needed for the pain (Tr.

5

382-383).

From January 2019 to May 2020, Plaintiff was treated by her primary care physician, Timothy Beaty, M.D. (Tr. 440-473). On January 24, 2019, Plaintiff complained of hip and back pain. Dr. Beaty's records indicate mostly normal findings on physical exam (Tr. 440-443). Dr. Beaty ordered an x-ray of Plaintiff's left hip, which was performed on January 24, 2019, and indicated no abnormality (Tr. 384, 437).

In February 2019, Plaintiff underwent pain management medication and engaged in physical therapy (Tr. 385-401). On March 5, 2019, Plaintiff reported that she continued to have left hip pain, which sometimes radiated to her knee, and that physical therapy did not help (Tr. 443). Dr. Beaty observed mostly normal findings on physical exam, with some tenderness to Plaintiff's posterior left hip (Tr. 443). Dr. Beaty ordered an MRI, which was performed on April 10, 2019, and was not revealing and showed no evidence of fracture or avascular necrosis, and no acute tendon injury (Tr. 444, 449, 491).

In April 2019, Dr. Beaty prescribed a muscle relaxant while Plaintiff awaited an orthopedic referral (Tr. 451). Dr. Beaty continued Plaintiff's pain medications in October 2019 (Tr. 457), December 2019 (Tr. 480), and May 2020 (Tr. 479). Plaintiff's exams continued to indicate mostly normal findings, but with some tenderness to Plaintiff's left hip (Tr. 455, 477, 480).

Starting in July 2019, until September 2019, Plaintiff briefly worked in a kitchen making pizzas and as a store manager (Tr. 45-46, 66). Plaintiff testified that she worked six-hour shifts and was on her feet the majority of the time (Tr. 46). Plaintiff testified that she quit this job because of her hip pain, and she was worried about further injury (Tr.

45-46).

On September 11, 2019, state agency medical consultant, Adrian D. Feinerman, M.D. examined Plaintiff (Tr. 415). Plaintiff presented with left hip pain, and reported that she could walk approximately 3 blocks, stand for 20 minutes, and sit for 30 minutes, but could not squat or bend (Tr. 416). Dr. Feinerman observed that Plaintiff had no limitation of motion of any joint, no anatomic deformity or limitation of movement of her spine, and that Plaintiff could ambulate 50 feet without an assistive device (Tr. 420).

Also, in September 2019, state agency medical consultant, Ranga Reddy, M.D. completed a Disability Determination Explanation (Tr. 63-72), indicating that Plaintiff could stand or walk, or sit, for a total of 6 hours in an 8-hour workday, could frequently climb ramps, but not ladders, ropes, or scaffolds and could frequently stoop, kneel, crouch but not crawl, and should avoid concentrated exposure to hazards (Tr. 69, 79-80). Dr. Reddy evaluated Plaintiff's impairments under Listing 1.04 (Spine Disorders) and recommended a light work capability (Tr. 71, 81).

In December 2019, Dr. Beaty's records indicated that Plaintiff would be released to return to work with restrictions (Tr. 482). These restrictions included permitting Plaintiff to move about at least once an hour, with no prolonged standing or walking (Tr. 483).

In March 2020, Plaintiff was treated by Matthew Chenault, D.C., who observed tenderness, edema and swelling on both sacroiliac joints and both sides of the lumbar spine (Tr. 493-494). Plaintiff's exams revealed normal muscle testing in her lumbar and lower extremities (Tr. 494). Plaintiff's Valsalva, Braggard, and Straight Leg Raising tests

were negative (Tr. 494). Plaintiff's Kemp and Milgram's tests were positive (Tr. 494). Plaintiff's FABERE hip test revealed pain in the left hip (Tr. 495). Dr. Chenault recommended 3 chiropractic visits per week for 3 weeks (Tr. 496). Plaintiff attended 3 chiropractic adjustments (Tr. 498, 500, 502). Plaintiff did not return for additional treatment (Tr. 510). Plaintiff testified during the hearing that she had no further appointments scheduled because she cannot afford treatment (Tr. 54).

In April 2020, state agency medical consultant, Sai Nimmagadda, M.D. completed a Disability Determination Explanation (Tr. 85), indicating that Plaintiff could stand or walk, or sit, for a total of 6 hours in an 8-hour workday, could frequently climb ramps, but not ladders, ropes, or scaffolds, and frequently stoop, kneel, and crouch, but not crawl, and should avoid concentrated exposure to hazards (Tr. 105-106). Dr. Nimmagadda evaluated Plaintiff's impairments under Listings 1.04 (Spine Disorders) and 1.02 (Dysfunction – Major Joints) and found that Plaintiff's limitations would not prevent her from performing her past relevant work as an Office Clerk Manager (Tr. 103, 107).

Also, in April 2020, state agency medical consultant, Ellen Rozenfeld, Psy.D completed a Disability Determination Explanation (Tr. 97), indicating that Plaintiff had no mental medically determinable impairments (Tr. 102-103). Rozenfeld evaluated Plaintiff's impairments under Listings 4010 (Essential Hypertension), 7160 (Dysfunction -Major Joints), and 2960 (Depressive, Bipolar and Related Disorders), and found that Plaintiff had no significant mental imitations in functioning (Tr. 102-103).

In May 2020, Dr. Beaty completed a treating source statement, and assessed that

Plaintiff could occasionally lift or carry 10 pounds, sit for 4 hours and stand or walk for 2 hours in an 8-hour workday, occasionally climb stairs and ramps, and balance, but could rarely climb ladders and scaffolds, stoop, kneel, crouch, or crawl (Tr. 473). Dr. Beaty assessed that Plaintiff needed a cane or other assistive device to ambulate effectively (Tr. 474-475). Plaintiff has not been prescribed a cane or other assistive device (Tr. 50).

At the October 2020 evidentiary hearing, Plaintiff testified that she could stand for approximately 15-30 minutes before she needs to sit down or change position (Tr. 48-49). When sitting in an office chair, she needs to change positions every five to ten minutes (Tr. 50). She can walk four blocks before she needs to sit down (Tr. 49). Plaintiff does not have an assistive device for walking, but sometimes uses a walking stick while walking outside (Tr. 50). Plaintiff testified that she cannot lift anything over 25 pounds (Tr. 50). Plaintiff testified that she completes household chores, like cleaning her bathtub, dishes, or cooking dinner, for approximately 15 to 20 minutes before she needs to sit down for 10 minutes (Tr. 51-52). She can attend church services on Sunday for approximately an hour and half, although she needs to change positions a lot (Tr. 52). Plaintiff can drive for approximately 50 miles before she needs to stretch and walk around (Tr. 52). Plaintiff has trouble sleeping because of her hip and back pain (Tr. 53). Plaintiff has no further appointments scheduled for her pain because she cannot afford treatment (Tr. 54).

## Analysis

Plaintiff makes two arguments in favor of remand (Doc. 18). First, she argues that the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Beaty. Second, Plaintiff argues that the ALJ failed to provide more than a perfunctory analysis

9

of the listings of impairments in his Step 3 analysis. The Court addresses these arguments in turn.

### A. Treating Physician's Opinion

In a treating source statement written in May 2020, Dr. Beaty opined on Plaintiff's functional limitations (Tr. 473-476). He indicated that Plaintiff could sit for 4 total hours and stand/walk for 2 hours in an 8-hour workday, and occasionally lift weight up to ten pounds (Tr. 474-475). He also reported that Plaintiff "ambulates with limp on left side [and is] unable to stand or walk for any significant length of time." (Tr. 474). He opined that Plaintiff would need to lie down or recline every one to two hours for 5 minutes during an 8-hour workday, would be off task for more than 25% of the workday, and would likely need to be absent from work for more than 4 days a month due to her impairments (Tr. 474). He also indicated that Plaintiff needed a cane or other assistive device to ambulate effectively (Tr. 474-475).

Plaintiff maintains that Dr. Beaty's opinion supported a work limitation of sedentary work, opposed to the light work RFC the ALJ adopted. Accordingly, Plaintiff argues that the ALJ erred in his evaluation and rejection of Dr. Beaty's opinion, which the ALJ ultimately found was less persuasive than the opinion of state agency medical consultant Dr. Nimmagadda (Tr. 24). In analyzing Dr. Beaty's opinion, the ALJ observed that it was supported by "limited objective evidence of unspecified weakness and a limp," and not consistent with Plaintiff's appearance at the consultative examination in September 2019 or the imaging that suggests relatively mild impairments (Tr. 24). The ALJ further observed that Dr. Beaty suggested that Plaintiff required a cane, although

10

one had not been prescribed, and there was no evidence that Plaintiff had been using a cane (Tr. 24). Finally, the ALJ reasoned that the opinion was inconsistent with Plaintiff's history of conservative treatment (Tr. 24). Whereas the ALJ found the opinions of Dr. Nimmagadda consistent with the imaging and findings at the September 2019 consultative examination (Tr. 24).

As Plaintiff points out, the Social Security Administration recently amended the Regulation applying to medical source opinions. The new Regulation applies to all applications filed after March 27, 2017, which includes this case, and eliminates the treating source rule. 20 C.F.R. § 404.1520c. It provides in pertinent part that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. The new Regulation also identifies specific factors for an ALJ to consider, including supportability, consistency, relationship to the claimant (length, frequency, purpose, and extent of the relationship), specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1). The Regulation specifies that the supportability and consistency of a physician's opinion are the most important factors and that the ALJ will explain how she considered these two factors. 20 C.F.R. § 404.1520c(b)(1). But the ALJ need not explain how she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(1).

Plaintiff maintains that the ALJ "cherry-picked" medical evidence that supported his ultimate conclusion and disregarded evidence supporting Dr. Beaty's limitations. Specifically, Plaintiff complains that Dr. Beaty's treatment notes since January 2019

11

supported his finding that Plaintiff had tenderness to the left SI area and posterior weakness to the left lower extremity; and that this opinion was far from the "unspecified weakness" as described by the ALJ. However, this argument approaches an improper request for the Court to reweigh the evidence. *See Burmester*, 920 F.3d at 510 ("The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.'") (internal citations and markings omitted). Although the record contained a few abnormal findings and consistent pain complaints which could have lent support to Dr. Beaty's May 2020 opinion, this does not establish that the ALJ's analysis was not based on substantial evidence. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (it is not the Court's role to re-weigh evidence or substitute its judgment of that of the ALJ).

Instead, the ALJ provided detailed reasons for his finding that Dr. Beaty's May 2020 opinion was not supported by the record. He noted that the opinion was inconsistent with the x-ray and MRI imaging and findings ordered and reviewed by Dr. Beaty himself in January 2019 and April 2019, of which Dr. Beaty observed no abnormalities (Tr. 444, 449, 491, 384, 437). Further, the ALJ also cited the inconsistency between Dr. Beaty's opinion that Plaintiff required a cane and the fact that no cane had ever been prescribed, and no medical evidence indicated that Plaintiff had used or been using a cane. Thus, the ALJ assessed that Dr. Beaty's opinion was less persuasive than that of Dr. Nimmagadda, which was consistent with the imaging and the consultative examination where Plaintiff did not demonstrate those additional limitations.

In sum, substantial evidence supports the ALJ's rejection of Dr. Beaty's medical

opinion regarding Plaintiff's limitations. Because the ALJ followed the steps required by the regulations and supported his findings by pointing to substantial evidence in the record, the Court will not overturn the ALJ's decision on this basis. *Burmester*, 920 F.3d at 510 ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. … Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if 'reasonable minds could differ concerning whether the claimant is disabled.'") (internal citations and markings omitted).

### B. Step 3 Analysis

Plaintiff also argues that the ALJ erred by failing to provide more than a perfunctory review of the Listings of Impairments at Step 3. At Step 3, the ALJ determines "whether the claimant's impairments are 'severe enough' to be presumptively disabling—that is, so severe that they prevent a person from doing any gainful activity and make further inquiry into whether the person can work unnecessary." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020) (citing 20 C.F.R. § 404.1525(a), *Sullivan v. Zebley*, 493 U.S. 521, 532–33 (1990)).

"An impairment is presumptively disabling if it is listed in the relevant regulations' appendix, *see* 20 C.F.R. § 404.1525(a), or if it is 'medically equivalent' to a listing." *Id.* (internal citations omitted). "A medically-equivalent impairment has characteristics 'at least of equal medical significance' to all the specified criteria in a listing." *Id.* (internal citations omitted). In considering whether a claimant's condition meets or equals a listed impairment, the ALJ "must discuss the listing by name and offer

13

more than a perfunctory analysis of the listing." *Id.* (citing *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *see also Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("[W]here an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required.").

The entirety of the ALJ's step 3 analysis provides:

> **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> After reviewing all of the documentary evidence and testimony of record, and giving particular consideration to the Listing of Impairments, the undersigned finds that the claimant 's impairments do not meet or equal any of the criteria of the listed impairments as set forth in 20 CFR, Part 404, Appendix 1 to Subpart P (the Listing of Impairments).

(Tr. 20).

Defendant concedes that the ALJ "did not identify the specific listings he considered at step three of his analysis" (Doc. 21, p. 5). However, Defendant argues that this error was harmless because Plaintiff has not alleged, or established, that she meets or equals a listing. *See Sosinski v. Saul*, 811 F. App'x 380, 381 (7th Cir. 2020) ("[E]ven if the ALJ does not offer such an analysis, we do not reverse if the claimant fails to show that he meets the criteria for that listing.") (citing *Maggard v. Apfel*, 167 F.3d 376 (7th Cir. 1999), *Rice*, 384 F.3d at 369; *Jeske*, 955 F.3d at 585). "[A]n error is harmless if it "leaves us convinced that the ALJ would reach the same result on remand." *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

Defendant also argues that the record shows that the ALJ considered evidence

14

relevant to listings 1.02 (dysfunction – major joints) and 1.04 (spine disorders) because the ALJ considered the disability determination explanations from the prior administrative medical findings considering those listings, (*see* Tr. 67, 77, 91, 103), in addition to imaging, physical examination findings, and subjective complaints; yet the ALJ concluded that none of the evidence supported a finding that Plaintiff's impairment meet or equaled any listing. *See Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (A court may review an ALJ's listings analysis "in light of elaboration and analysis appearing elsewhere in the decision.").

At Step 3, it is the claimant's burden to show "not only that his impairments meet a listing, but that his impairments satisfy all of the various criteria specified in the listing." *Maggard*, 167 F.3d at 380; *see also Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (citing *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006)). The Seventh Circuit has also clarified that *Barnett* "does not require ALJs to name and discuss every Listing in their written decisions", especially where the claimant does not identify a Listing at the hearing. *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022). "[N]either the SSA's regulations nor the Social Security Act impose an affirmative obligation on ALJs to scour the Listings for a possible match, no matter how unlikely." *Id.* (quoting Soc. Sec. Ruling (SSR) 17-2p, available at *Soc. Sec. Ruling (Ssr) 17-2p: Titles II & Xvi: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med. Equivalence*, SSR 17-2P (S.S.A. Mar. 27, 2017), at 84) ("If an [ALJ] believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to

articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment.").

Here, it is dispositive that Plaintiff identifies no specific listing she believes she meets, nor does she point to any evidence that the ALJ overlooked a specific listing level severity. While Plaintiff generally complains that the ALJ did not consider additional limitations on Plaintiff's ability to perform light work activity, as suggested by Plaintiff's treating physician, Plaintiff does not elaborate on the specific symptoms the ALJ failed to assess, nor the listing to which those symptoms might apply. "To demonstrate that the ALJ's listing level analysis was not supported by substantial evidence, the claimant must identify misstated or ignored evidence of record that met or equaled the criteria." *Mark O. v. Kijakazi*, No. 19 CV 2891, 2022 WL 1404827, at *5 (N.D. Ill. May 4, 2022) (citing *Sims v. Barnhart*, 309 F.3d 424, 429–30 (7th Cir. 2002). Plaintiff "must also show that a more thorough step three analysis could have led to a different outcome." *Id.* (citing *Jeske*, 955 F.3d at 589*–*91). Plaintiff has made neither showing here.

Moreover, the Seventh Circuit has found that subsequent analysis can provide a logical bridge for a conclusion at Step 3 even where the ALJ fails to specifically refer to the Listing. *See Adkins v. Astrue*, 226 F. App'x 600, 606 (7th Cir. 2007) (finding that the ALJ provided an adequate explanation at Step 3, where the ALJ considered the "issues relevant to [the Listing]" and provided more than a perfunctory analysis of those issues, even though the ALJ never referred to the pertinent listing). It would have been helpful for the ALJ to identify the listings he considered by name and their criteria. *See Adkins,* 226 F. App'x at 605 (explaining that, where the ALJ failed to "refer to the listing," the

16

court was "somewhat at a loss to be able to ascertain how meaningfully he considered it …"). However, it is a failure to "mention [a] specific listing ... *combined with a perfunctory analysis*" that requires remand. *Ribaudo*, 458 F.3d at 583. The Court is not convinced that the ALJ's treatment and consideration of Plaintiff's impairments was done in a perfunctory fashion.

Further, the fact that no treating or examining physician identified findings equivalent in severity to the criteria of any listing also supports the ALJ's conclusion that Plaintiff did not meet or equal any listing, as is the fact that no state agency consultant opined a listing level condition. *See, e.g., Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (where a claimant did not present any medical evidence supporting the position that his impairments meet or equaled a particular listing, and state-agency physicians concluded that claimant's impairments did not meet or medically equal a listing, and there was no medical opinion to the contrary, the ALJ's failure to refer to a specific listing at Step 3 is not a ground for remand) (citing *Rice*, 384 F.3d 363; *Scheck v. Barnhart*, 357 F.3d 697 (7th Cir. 2004). Plaintiff carries the burden to show that her impairments meet a listing, and she satisfied all the various criteria specified in the listing. *Ribaudo*, 458 F.3d at 583. In other words, Plaintiff must bring forward something more than conclusory statements that the ALJ "erred" at Step 3. Because Plaintiff has not done so, the Court will not overturn the ALJ's reasoned conclusion that Plaintiff's impairments did not meet or equal any of the criteria of the listed impairments.

## **Conclusion**

After careful review of the record as a whole, the Court is convinced that the ALJ's findings are supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment (Doc. 19) is **DENIED**. The final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**SO ORDERED.**

Dated: September 19, 2022

DAVID W. DUGAN
United States District Judge